UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ROBERT I. SCHWARTZ,

        Plaintiff,

   -against-                         **MEMORANDUM AND ORDER**
                                       06-CV-6754 (RRM)(LB)

YORK COLLEGE and MARCIA KEIZS,

        Defendants.
--------------------------------------------------------X
**ROSLYNN R. MAUSKOPF, United States District Judge.**

     Plaintiff Robert I. Schwartz ("Plaintiff") brings this employment discrimination action

against Defendants York College (a college subdivision of the City University of New York

("CUNY") referred to herein as "York")[1] and York President Marcia Keizs pursuant to Title VII

of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); the Age Discrimination

in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"); 42 U.S.C. § 1981; New York

State Human Rights Law, N.Y. Exec. Law §§ 296 *et seq.* ("NYSHRL"); and New York City

Human Rights Law, N.Y.C. Admin. Code §§ 8-107 *et seq.* ("NYCHRL").  Currently before the

Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of

Civil Procedure.  For the reasons stated below, Defendant's motion for summary judgment is

GRANTED as all claims except the NYCHRL claim, which is DISMISSED WITHOUT

PREJUDICE to renew in a state court forum.

---

[1] As in its previous Memorandum and Order, this Court notes that CUNY is the proper party to this action.  *See* Mem. & Order at 1 n.1 (Doc. No. 36); *see also* N.Y. Educ. Law §§ 6202(2), 6202(3), 62026; *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 81 n.2 (2d Cir. 2004) (per curiam) (noting that CUNY senior colleges do not have legally cognizable existences separate from CUNY).

Plaintiff is a Caucasian male, sixty years of age at the time the events at issue took place. (Am. ComPl.'s ¶ 13.)  He alleges that York's 2005 decision not to hire him for the position of Director of Student Activities was the result of discrimination based on age, race, and gender. (*Id*.)  He further alleges that, in retaliation for filing a March 2006 discrimination charge with the United States Equal Employment Opportunity Commission ("EEOC"), York did not select him for various other positions, denied him reappointment to adjunct positions, and declined to extend a federal grant funding his employment.  (Am. ComPl.'s ¶¶ 54-55.)

## I.      SEARCH FOR DIRECTOR OF STUDENT ACTIVITIES

York commenced a search in February 2005 to fill the vacant position of Director of Student Activities.  (Def.'s 56.1 Stmt. ¶ 17.)  To that end, it issued a position vacancy notice ("PVN") describing the duties and responsibilities of the position, the qualifications required for candidates, and set a closing date of March 2, 2005 for applications.  (*Id*. ¶¶ 17-18.)  The Director of Student Activities would, according to the PVN, be "responsible for providing the vision and leadership for student activities and student leadership at [York]."  (*Id*. ¶ 19.)

In February 2005, Avis Hendrickson, Vice President for Student Development, convened a search committee ("Committee") made up of five York employees and three students, to screen

---

[2] Unless otherwise noted, citations to the parties' Rule 56.1 statements concern factual assertions that are admitted or are deemed admitted because they were not contradicted by citations to admissible evidence.  *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").  Plaintiff's 56.1 Statement do not altogether comport with Local Civil Rule 56.1(b).  Ordinarily, failure to comply with the Local Rules regarding 56.1 Statements would result in the material facts in the non-complying party's Statement being deemed admitted for the purposes of deciding the pending summary judgment motion.  *See* Local Civil Rule 56.1(c).  A district court, however, "has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Rateau v. City of N.Y.*, No. 06-CV-4751 (KAM)(CLP), 2009 U.S. Dist. LEXIS 90112, at *2 n.1 (E.D.N.Y. Sept. 29, 2009) (exercising discretion in reviewing the admissible record evidence in determining whether proposed undisputed facts were disputed); *Robinson v. Keyspan*, No. 03-CV-4796 (FB)(LB), 2005 U.S. Dist. LEXIS 27057, at *2 n.2 (E.D.N.Y. Nov. 9, 2005) (same).  Accordingly, for the purposes of this motion, Plaintiff's statement of undisputed facts is treated as undisputed only where it is not controverted by admissible evidence in the record.

the fifty-seven timely applications submitted for the position.  (*Id.* ¶¶ 20-21.)  The Committee

chose eight applicants to interview, including Plaintiff.[3]  (*Id.* ¶ 23.)

   The Committee required each applicant selected for interviews to complete two written

exercises:  a critique of the *York College Student Club and Organization Handbook* to be

submitted prior to the interview, and a letter to a hypothetical student group to be submitted

immediately subsequent to the interview.  (*Id.* ¶ 26.)  After interviews on May 31 and June 1,

2005, the Committee evaluated the applicants by assigning each interviewee a certain number of

points based on the two writing exercises and the applicant's responses to a common set of

questions and scenarios.  (*Id.* ¶¶ 27-28.)  Using this point system, the Committee awarded the

applicants the following scores:  Plaintiff, 87.24 points; Linda McKinzie, 83.49 points; Herman

Wright, 68.74 points;[4] and Jean Phelps, 66.99 points.  (*Id.* ¶¶ 29-32.)  Since those four

individuals had the highest numerical scores, the Committee agreed, with Olga Dais, the

Executive Director of Compliance Programs & Legal Affairs, to refer them for final interviews.

(*Id.* ¶¶ 34-35.)  Each applicant was asked to voluntarily complete a "Pre-Employment Self-

Identification" card.  (*Id.* ¶ 36.)  Plaintiff self-identified as a fifty-nine year old Caucasian male;

McKinzie as a forty-five year old African-American female; Wright as a fifty-four year old

African-American male; and Phelps as a fifty-seven year old African-American female.  (*Id.* ¶¶

37-45.)

   By June 2005, Hendrickson no longer served as Vice President for Student Development;

thus, President Keizs – a sixty year old Caucasian woman – interviewed the finalist candidates.

(*Id.* ¶¶ 46-47, 52.)  At the request of the student government, Keizs invited Sheryl Purrier, an

---

[3] Two applicants withdrew their names, leaving six applicants.
[4] Though Wright had failed to submit the exercise before the interview, the Chair of the Committee and Olga Dais, Executive Director of Compliance Programs & Legal Affairs, decided to lower his grade rather than disqualify him completely.  (Def.'s 56.1 Stmt. ¶ 33.)

incoming African-American female student senator selected by her peers to participate in the interview process, to join her in the four interviews. (*Id.* ¶¶ 48-49.) The Committee did not provide Keizs with the applicants' numerical scores or their rankings. (*Id.* ¶ 50.)

The interviews were held on June 15, 2005. (*Id.* ¶ 51.) Keizs determined that Wright's application would not be given further consideration due to his apparent lack of preparedness for the interview. (*Id.* ¶ 53.) She asked Dr. Janis Jones, Dean for the Executive Office, to contact references provided by the remaining three applicants. (*Id.* ¶ 55.) She subsequently determined that Phelps and McKinzie were the most qualified finalists, based on their professional experiences and the requirements of the position, and asked Dean Jones, the interim Vice President for student development, to review their applications. (*Id.* ¶ 56-57, 63.) Both agreed Phelps was the best candidate, and Keizs submitted Phelps' name to the Chancellor's office for approval by the CUNY Board of Trustees. (*Id.* ¶ 65.) Phelps was appointed Director of Student Activities effective September 1, 2005. (*Id.* ¶ 66.)

Phelps was employed at York for nineteen years as Assistant to the Director of Student Activities and as Director of the Women's Center, where she coordinated activities for more than one hundred regular participants. (*Id.* ¶¶ 58-59.) She has a Master's degree, and worked as an adjunct faculty member and counselor. (*Id.* ¶ 58.) McKinzie was Coordinator of Student Life at Mercy College for five years, and has a Master's degree. (*Id.* ¶¶ 61-62.) Keizs determined these responsibilities to be more similar to those of the Director of Student Activities than the Plaintiff's employment, which she considered to be associated with counseling. (*Id.* ¶ 61.)

Plaintiff has a Master's degree in Counseling and Personnel Services, a Doctorate of Education in Guidance and Personnel Services, a Certification in Guidance from New York State, and a license in Psychology from the state of Massachusetts. (Pl.'s 56.1 Stmt. of Add'l

Facts (Doc. No. 68) ¶¶ 1-2.)  Plaintiff worked at Kingsborough Community College as a Counselor, Advisor, Director and Associate Professor intermittently for over thirty years.  (*Id.* ¶ 3.)  In 1999-2000, he worked as the Acting Director of Student Life, Counseling and Recreation at LaGuardia Community College.  (*Id.* ¶ 4.)  He worked at Baruch College as a Senior Internship Coordinator from 2000 to 2001.  (*Id.* ¶ 3.)  Finally, from 2002-2007 he served as the Administrative Director/Counselor of the McNair Scholars Program.  (*Id.* ¶ 5.)  He also held various adjunct positions throughout these years.  (*Id.* ¶ 8.)

Plaintiff alleges that he was not hired despite being the most qualified candidate, and that the decision not to hire him was improperly motivated by race, age, and gender bias.  On May 18, 2006, Plaintiff filed a discrimination charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging improper discrimination based on race, gender, and age.  (Def.'s 56.1 Stmt. ¶ 72; Def.'s Mot. for Summ. J., Ex. 1.)  The EEOC issued a right to sue letter on or about October 5, 2006.  (Def.'s 56.1 Stmt. ¶ 74.)

## II.     ALLEGED RETALIATION

Plaintiff further alleges that York retaliated against him, denying him positions to which he applied as punishment for filing the EEOC charge.  In April 2007, eleven months after receiving notice of Plaintiff's EEOC charge, York called for the submission of resumes for the position of Director of Academic Advising, to which Plaintiff timely applied.  (Def.'s 56.1 Stmt. ¶¶ 75-76.)  Due to a lack of qualified applicants the search was dubbed a "failed search" and no interviews were scheduled.  (*Id.* ¶ 77.)  In October 2007, York instituted a new search for the position.  (*Id.* ¶ 78.)  Plaintiff claims he applied for the position, though York denies receipt of his application.  (*Id.* ¶ 79.)

In July 2007, fourteen months after receiving notice of Plaintiff's EEOC charge, York solicited resumes for the position of Director of Counseling, a position to which Plaintiff and forty-two other individuals applied. (*Id.* ¶¶ 80-81.) A five-member search committee screened these applicants, and decided to interview only the seven most qualified, omitting Plaintiff from the list of interviewees. (*Id.* ¶¶ 82-83.) Plaintiff did not know the qualifications of the successful applicant hired by York as Director of Counseling, nor does the record so indicate. (*Id.* ¶ 85.)

In May 2008, two years after receiving notice of Plaintiff's EEOC charge, York solicited resumes for the position of SEEK ("Search for Education, Elevation, and Knowledge") Counselor, a position calling for individuals with former counseling experience, to which Plaintiff applied. (*Id.* ¶¶ 86-87.) Though Plaintiff was chosen as one of six applicants selected for further interviews, he withdrew from the process of his own accord. (*Id.* ¶¶ 88-89.)

CUNY adjunct employees are appointed on a temporary basis for a fixed period of time, based on the need of the departments and CUNY's financial ability to compensate employees, with no expectation of reappointment. (*Id.* ¶¶ 90-92.) Decisions regarding adjunct appointments are made at the department level; the Human Resources office prepares a report, signed by Keizs, which the Chancellor and Board of Trustees must approve. (*Id.* ¶ 93.) However, Keizs' signature is the extent of her participation in this process. (*Id.* ¶ 93.) Plaintiff was appointed as an adjunct in several York departments from 2003 to 2006, most of which expired prior to York's receipt of notice of Plaintiff's EEOC charge. (*Id.* ¶¶ 94-103.) From January to June 2006, Plaintiff served as an adjunct in the Department of Admissions. (*Id.* ¶ 104.) Director of Admissions Diane Warmsley determined that full-time employees could perform Plaintiff's work and thus did not seek to re-appoint Plaintiff; at that time, she was unaware of Plaintiff's discrimination charge. (*Id.* ¶¶ 105-06.) From February to June 2006, and June to August 2006,

Plaintiff served as an adjunct in the York College Counseling Center. (*Id.* ¶¶ 106-07.) A loss of funding thereafter led to the expiration without renewal of Plaintiff's adjunct position, as well as that of Maria Velez-Craan; at the time of expiration, the supervisor of the Center was not aware of Plaintiff's discrimination charge. (*Id.* ¶¶ 109-10.)

From 2002-2007, Plaintiff was employed as the part-time Administrative Director of the McNair Scholars Program at York College by the Research Foundation of the City University of New York, a private non-profit organization. (*Id.* ¶ 113.) The Program was funded with federal grant money, and Plaintiff's employment terminated in late 2007 when the federal government declined to renew the grant. (*Id.* ¶¶ 114-15.)

On December 26, 2006, Plaintiff commenced the instant action *pro se*, retaining counsel on December 18, 2007. He then, through counsel, filed an Amended Verified Complaint dated January 15, 2008. (*See* Doc. No. 13.) On March 31, 2009, this Court granted Defendants' motion to dismiss several of the claims alleged in the Amended Verified Complaint. (*See* Doc. No. 36.) Several claims remain in this action: (1) Title VII claims against CUNY for race and gender discrimination and retaliation; (2) an ADEA claim against Keizs in her official capacity for prospective injunctive relief; (3) claims pursuant to NYHRL against president Keizs in her individual capacity for monetary relief for race, gender, and age discrimination, and retaliation; and (4) claims under NYCHRL against president Keizs in her individual capacity for monetary relief for race, gender, and age discrimination, and retaliation.[5] Defendants now move for summary judgment on these remaining claims. (*See* Doc. No. 58.)

---

[5] Plaintiff's claims against York for discriminatory conduct and retaliation in violation of §§ 1981 and 1983 were dismissed in this Court's previous Order. (*See* Doc. No. 36.) The Amended Complaint does not allege § 1981 claims against Keizs; thus, there are no extant § 1981 claims.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, a district court must draw all reasonable inferences in favor of the nonmoving party.  *See id.* at 249 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998).  The court must not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)).  Any evidence in the record of any material fact from which an inference could be drawn in favor of the non-moving party precludes summary judgment.  *See Castle Rock Entm't*, 150 F.3d at 137.

Once the movant has demonstrated that no genuine issue of material fact exists, then "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).  However, there must exist more than mere "metaphysical doubt as to the material facts" to defeat a summary judgment motion.  *Id.* at 586.  Instead, the non-moving party must present "concrete evidence from which a reasonable

juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Only disputes over material facts "that might affect the outcome of the suit under the governing law" will properly preclude the entry of summary judgment. *Id*. at 248; *see also Matsushita*, 475 U.S. at 586.

Courts are obliged to exercise particular caution in determining whether to grant summary judgment, because direct evidence of an employer's discriminatory intent is rare and "must often be inferred from circumstantial evidence." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quotation marks and citation omitted); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). However, a plaintiff cannot defeat a summary judgment motion simply by presenting "conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Ragusa v. Malverne Union Free Sch. Dist.*, 582 F. Supp. 2d 326, 339 (E.D.N.Y. 2008) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)); *see also Schwapp*, 118 F.3d at 110.

## DISCUSSION

## I.     DISCRIMINATION CLAIMS:  TITLE VII AND ADEA

Plaintiff alleges that York discriminated against him by terminating him on the basis of race, gender, and age. Title VII provides that it is an "unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). Thus, "[a]n employment decision . . .

violates Title VII when it is based in whole or in part on discrimination." *Holcomb*, 521 F.3d at 137 (citation omitted). Under the ADEA, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

"In cases, as in the one at hand, where the evidence of the alleged wrongdoing is circumstantial rather than direct, courts analyze employment discrimination claims pursuant to Title VII and the ADEA under the familiar burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Ascione v. Pfizer, Inc.*, 312 F. Supp. 2d 572, 576 (S.D.N.Y. 2004) (*citing Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)); *see also D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 194–95 (2d Cir. 2007).

First, a plaintiff must establish a prima facie case of discrimination by demonstrating that: "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010). The plaintiff's burden in presenting evidence to support a prima facie case of discrimination is "*de minimis.*" *Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009) (citation omitted).

If the plaintiff succeeds in satisfying his initial burden, then "a presumption of discrimination arises and the burden shifts to the defendant, who must proffer some legitimate, nondiscriminatory reason for the adverse action." *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010). If the defendant can offer such a reason, defendant "will be entitled to summary

judgment unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Id.* (citation omitted). The plaintiff may show, for example, that the defendant's apparently legitimate reasons were pretextual, or that the defendant's proffered reason was not the sole reason and unlawful discrimination was at least a "motivating factor[]." *Holcomb*, 521 F.3d at 138 (citation omitted). Plaintiff at all times bears the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (citation omitted).

Defendants argue that summary judgment is appropriate because Plaintiff has failed to raise an inference of discrimination based on race or gender necessary to establish the fourth element of the prima facie case. Alternatively, Defendants argue that summary judgment is appropriate because Defendants have set forth legitimate, non-discriminatory reasons for choosing not to hire Plaintiff, and Plaintiff cannot show that these reasons are pretextual. The Court will assume for the purposes of this motion that Plaintiff has made out a prima facie case of discrimination.[6] *See, e.g., Peterson v. City Coll.*, 32 F. Supp. 2d 675, 685 (S.D.N.Y. 1999); *see also Lapsley v. Columbia Univ.*, 999 F. Supp. 506, 515 (S.D.N.Y. 1998) (collecting cases in which the court assumed, without analysis, that plaintiff established a prima facie case of discrimination). The Court will thus proceed to the last two steps in the *McDonnell Douglas* inquiry: whether Defendants have provided a legitimate, nondiscriminatory explanation for the

---

[6] Some courts have found that "reverse discrimination" claims should be judged by a more rigorous standard. For example, one Circuit court has found that satisfaction of the prima facie standard in the reverse discrimination context requires demonstrating "background circumstances support[ing] the suspicion that the defendant is that unusual employer who discriminates against a [favored group]." *See, e.g., Parker v. Balt. & Ohio R.R. Co.*, 652 F.2d 1012, 1017 (D.C. Cir. 1981) (reasoning that *McDonnell Douglas* analysis is fundamentally based on the Plaintiff's "[m]embership in a socially disfavored group"). Courts in the Second Circuit are split on the issue. Although some district courts in this Circuit have applied the heightened standard, *compare Olenick v. N.Y. Tel.*, 881 F. Supp. 113, 114 (S.D.N.Y. 1995) (adopting the heightened *Parker* standard) *with Ticali v. Roman Catholic Diocese of Brooklyn*, 41 F. Supp. 2d 249, 260-62 (E.D.N.Y. 1999) (declining to adopt heightened standard). Resolution of this issue is unnecessary in the instant case. Even assuming the usual, lower standard of analysis, Plaintiff has failed to show the non-discriminatory reasons articulated by Defendants are pretextual.

adverse employment decision at issue, and whether Plaintiff has adequately rebutted this explanation with evidence of pretext.

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED as to Plaintiff's Title VII racial and gender discrimination claims and Plaintiff's ADEA claim.

## A.  Race and Gender

Plaintiff alleges that the failure to award him the position of Director of Student Activities was based on his race and gender.  Defendants have carried their burden of producing evidence that there existed legitimate, non-discriminatory reasons justifying the action complained of by Plaintiff:  namely, that Phelps' previous work experience matched the demands of the position more closely than Plaintiff's.  The defendant's burden at this stage is "one of production, not persuasion."  *Reeves*, 530 U.S. at 142.  The court is not to pass judgment on the soundness or credibility of the reasons offered by defendants, so long as the reasons given are "clear and specific."  *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 381 (2d Cir. 2003) (citation omitted).  Those offered here fall well within the ambit of legitimacy; though all agree that Plaintiff and Phelps were both qualified for the position at issue, Phelps' nineteen years of employment with York, including seven years running the Women's Center there, was in Keizs's view more relevant to the position's requirements.  (*See* Pl.'s 56.1 Stmt. of Add'l Facts (Doc. No. 68) ¶¶ 70-74, 87, 108, 118; Aff/Decl. in Opp. to Motion for Summ. J., Ex. 3 (Doc. No. 66-6); Def.'s Aff/Decl. in Supp. of Motion for Summ. J., Ex. H (Doc. No. 63-5).)

Plaintiff argues that the reasons offered by Defendants are pretextual, and that the actual reason for the conduct at issue is discriminatory animus.  In support, he makes three main arguments.  First, he contends that he was the superior candidate pursuant to his experience and

background, and as reflected by the fact that he scored the highest points on the initial written component of the interview process. Second, he argues that Keizs was under pressure to hire women and minorities and engaged in "reverse discrimination" against Plaintiff, the only white, male candidate. Third, Plaintiff argues that the women and minority finalists were given preferential treatment.

To survive a motion for summary judgment, a Plaintiff must offer "sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence" that unlawful discrimination precipitated the adverse employment action. *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). A plaintiff "may not prevail by establishing only [falsity], but must prove, in addition, that a motivating reason was discrimination." *Bickerstaff*, 196 F.3d 435, 447 (2d Cir. 1999) (internal quotation marks and citations omitted). Plaintiff has failed to meet his burden. He makes allegations of pretext, to be sure, but they are unsupported by credible, admissible evidence beyond his own conjecture, speculation, and opinion.

First, Plaintiff's subjective opinion in his own superior worth does not create a genuine issue of material fact. *See Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996) (finding same with respect to personal opinion of performance). Plaintiff himself does not dispute that Phelps was qualified for the position at issue. Courts will not substitute their judgment for that of employers, and indeed "must respect [employers'] unfettered discretion to choose among qualified candidates." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001). Since Keizs did not consult the scores for the written exercise, this determination was based on a comparison between the applicants' resumes and the interview itself. It is entirely acceptable for Defendants to prefer Phelps' professional background, with its emphasis on

student activities, rather than Plaintiff's professional background, with its emphasis on counseling.  (*See* Pl.'s 56.1 Stmt. of Add'l Facts ¶¶ 70-74, 87, 108, 118.)

Plaintiff points to negative aspects of Phelps' application package, highlighting unfavorable aspects of her recommendations,[7] noting an error (later corrected) on her resume in a previous search, and alleging that several individuals spoke with Keizs about potential problems with Phelps as an administrator.  Plaintiff's contention that colleagues spoke about Phelps unfavorably to Keizs is unsupported by the record.  For example, one such individual cited by Plaintiff, Anthony Andrews, testified in his deposition that he spoke to Keizs generally about the qualities he felt were important for the position, mentioned that he did not work well with Phelps, and discussed her positive attributes as well as those of other candidates.  (Pl.'s Aff/Decl. in Opp. to Motion for Summ. J., Ex. 7 (Doc. No. 66-9).)  Similarly, Plaintiff relies heavily on an affidavit submitted by Dr. Arleen Schreiner, a retired Director of Counseling, for his contention that Keizs was approached regarding Phelps by several members of the faculty.  However, Schreiner's affidavit relies on inadmissible  hearsay and thus fails to substantiate that claim. (*See, e.g.*, Aff/Decl. in Opp. to Motion for Summ. J, Ex. 10 at ¶¶ 28,[8] 29,[9] 48[10] (Doc. No. 66-11).)  As to the corrected resume and the equivocal aspects of some recommendations, these are insufficient to show discriminatory animus:  "an employer's judgment in selecting and applying subjective criteria may be poor, and it may be erroneous[,] as long as it is not discriminatory."

---

[7] In his opposition to this motion, Plaintiff avers, "[a]s I recall, there was one [recommendation] that might be perceived as being negative"  (Aff/Decl. in Opp. to Mot. for Summ. J. Ex. 5, 15 (Doc. No. 66-7).)  One recommender circled, as a response to the question "Would you recommend him or her without reservation" the option "with some reservation."  (*Id.* 85.)  This complaint seems to derive from the recommender's feeling that Phelps did not encourage students to take women's studies courses to enough of a degree.  (*Id.*)

[8] "Chairman Ruttenberg (History and Philosophy) told me that he went to President Keisz about Ms. Phelps, asking her not to choose Ms. Phelps for the Position."

[9] "Ms. Barbara Hall informed me that some of the students had told her negative things about Ms. Phelps."

[10] "Steve Tyson . . . told me that he was at a political dinner and overheard a female politician in Jamaica ask President Keizs promise to take care of Jean Phelps . . . .";  "I believe Ms. Phelps often turned things into a question of race";  "I note that Jean Phelps was President of the Jamaica, New York chapter of the NAACP.  I believe that this may have influenced Ms. Keizs to hire Ms. Phelps for the Position."  *Id.*

*Gilman v. Runyon*, 865 F. Supp. 188, 193 (S.D.N.Y. 1994) ("Evidence that an employer made a poor business judgment in discharging an employee is generally insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons.") (citations and quotation marks omitted). Title VII and the ADEA obligate Defendants only to base their actions on nondiscriminatory considerations, not sensible hiring practices, and Plaintiff has put forth no credible evidence to show discrimination was behind the hiring decision here. *See Scaria v. Rubin*, 117 F.3d 652, 655 (2d Cir. 1997) (finding that employer may favor experience over education and that doing so was not pretextual).

Plaintiff's next argument, similarly unavailing, is that Keizs was under pressure to hire women and minorities and thus the decision to hire Phelps was based on impermissible considerations of race and gender. Plaintiff's assertion that he heard rumors from various individuals that there existed pressure to hire minority candidates is hearsay and thus will not be considered by this Court. Fed. R. Civ. P. 56(e)(1) (stating that affidavit opposing summary judgment "must be made on personal knowledge, set[ting] out facts that would be admissible in evidence"); *see Howley v. Town of Stratford*, 217 F.3d 141, 155 (2d Cir. 2000) (plaintiff's testimony, in Title VII case, of co-workers' alleged statements made by her supervisor were inadmissible for the fact that they were made, since the testimony was not based on personal knowledge); *see also Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001) ("It is appropriate for a district court ruling on summary judgment to consider only admissible evidence."). Likewise, the statements cited in the Schreiner affidavit are speculative. (*See, e.g.*, Aff/Decl. in Opp. to Motion for Summ. J, Ex. 10 at ¶¶ 27, 49.)

Plaintiff's argument that the inclusion of an African-American, female student senator to take part in the interview process somehow indicates the existence of discriminatory animus is

both specious and belied by the record – it is undisputed that the students requested a representative at the interviews, and that the individual was chosen by her peers, not the administration. Plaintiff would have the Court extrapolate racial animus from the fact that one "Email from the President" – an internal communication sent on behalf of Keizs detailing personnel changes at York – mentions the neighborhoods in which three of the newly hired employees reside. The Court fails to understand, and Plaintiff has not adequately shown, how this corresponds to racial discrimination. Only evidence "that allows for a reasonable inference of discrimination," not merely that which "gives rise to speculation and conjecture" fulfils the Plaintiff's burden. *Bickerstaff*, 196 F.3d at 448.

Third, Plaintiff broadly argues that the women and minority finalists were given preferential treatment. For example, Plaintiff points to the appointment of two women to administrative positions at York in 2005. This fact is wholly irrelevant in light of the fact that Plaintiff has conceded that he lacked any personal knowledge regarding either woman's qualifications or the specifics of the selections. (Pl.'s 56.1 Cntrstmt. at ¶¶ 91-93.)

Plaintiff also asserts that Wright's pre-interview writing sample was accepted late. However, Wright was penalized for his lateness, and was not selected to interview with Keizs. Likewise, that McKinzie was offered alternative employment at York, but Plaintiff was not, is explained by Defendant's legitimate, non-discriminatory explanation – namely, that Plaintiff was already employed at York, while McKinzie was not. Plaintiff's allegations that certain aspects of Phelps' application package were overlooked – for example, allegations of misconduct in her professional and personal life – are completely unsubstantiated by the record and rely once again primarily on inadmissible hearsay in the Schreiner affidavit. (Pl.'s 5.1. Stmt. of Add'l Facts ¶¶ 185-205.) They thus fail to support Plaintiff's arguments.

Plaintiff himself has conceded the weakness of his claims. When asked at his deposition whether he believed Keizs discriminated against him on the basis of race, he replied "I do not." (Aff/Decl. in Opp. to Motion for Summ. J., Ex. 1 at 83 (Doc. No. 66-1-2).) Similarly, when asked whether he believed Keizs discriminated against him on the basis of gender, he replied "I don't know." (*Id.* at 83.) Plaintiff's allegations, based solely on conjecture as to possible motivations for the hiring decision here, are insufficient to defeat summary judgment. *Abbey v. 3F Therapeutics, Inc.*, No. 06-CV-409 (KMW), 2011 WL 651416, *7 (S.D.N.Y. Feb. 22, 2011) (noting that summary judgment will not be defeated by "unsupported alternative explanations of [the party's] conduct.").

The Court has considered all the evidence in the record, and has granted Plaintiff all of the inferences to which he is entitled. Plaintiff has failed to proffer sufficient evidence to support a finding that he was not appointed to the position of Director of Student Activities for discriminatory reasons. For these reasons, Defendant's motion for summary judgment is GRANTED as to Plaintiff's Title VII racial and gender discrimination claims.

## B. Age Discrimination

With respect to Plaintiff's age discrimination claim under the ADEA, Defendants only challenge whether Plaintiff's failure to be hired took place under circumstances that give rise to an inference of discrimination. The Court will focus on the last two steps in the *McDonnell Douglas* inquiry: whether Defendants have provided a legitimate, nondiscriminatory explanation for the adverse employment decision at issue, and whether Plaintiff has adequately rebutted this explanation with evidence of pretext.

First, the Court notes that great significance is accorded to the age difference between the plaintiff and the applicant hired in ADEA cases: since "the ADEA prohibits discrimination on

the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Moreover, "the smaller the difference in age" between the employees, "the weaker the inference of discrimination." *Barth v. CBIS Fed., Inc.*, 849 F. Supp. 864, 869 (citing *Wolfe v. Time, Inc.*, 702 F. Supp. 1045, 1049). The age difference between Plaintiff and Phelps is only two years, and the other two unsuccessful applicants are actually younger than both Plaintiff and Phelps. Thus, taking the totality of the circumstances into consideration, no reasonable fact-finder could infer that Plaintiff was not hired to make way for a younger individual. *See id.* (holding a five year gap to be insufficient to create an inference of discrimination).

Plaintiff's only direct evidence as to age discrimination is based the Schreiner affidavit which alleges that Keizs asked her: "Why would [Wright] want the job given his age?" (Aff/Decl. in Opp. to Motion for Summ. J., Ex. 1 at 83.) However, this sole comment is insufficient to support a claim of age discrimination, especially when the Defendant went on to hire an individual *older* than the subject of this remark. *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (noting that "such [stray] comments cannot get a discrimination suit to a jury."). All this evidence, taken together, is thus insufficient to support a reasonable inference of age discrimination. Defendant's motion for summary judgment is GRANTED with respect to Plaintiff's ADEA claims against York and Keizs.

## II.     TITLE VII RETALIATION

In order to establish a prima facie case of retaliation under Title VII, a "plaintiff must demonstrate participation in protected activity known to the defendant, an employment action

disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action." *Cruz v. Coach Stores*, 202 F.3d 560, 566 (2d Cir. 2000).

Plaintiff filed a discrimination charge with the EEOC on May 18 2006, and EEOC issued a right to sue letter on or about October 5, 2006. (Def.'s 56.1 Stmt. ¶ 74.) Neither party disputes that Plaintiff's EEOC charge constitutes protected activity, or that Plaintiff was the subject of an disadvantageous employment action. The dispute as to Plaintiff's retaliation claim centers on whether Plaintiff has adequately proven that there existed a causal connection between the EEOC charge and the various adverse employment actions he alleges. Plaintiff himself has stated that he "wasn't sure he was retaliated against." (Pl.'s 56.1 Reply Stmt. ¶ 181.) However, Plaintiff now contends that, in retaliation for the EEOC charge, he was not reinstated for certain adjunct positions, was not hired for two other positions to which he applied, and the funding for the McNair Scholars Program, which he supervised, was terminated. The Court takes these issues in turn.

## A. Adjunct Positions

Plaintiff points to several adjunct appointments from 2003-2006 to which he was not reappointed. (Def.'s 56.1 Stmt. ¶¶ 94-103.) Since most of those listed by Plaintiff occurred prior to York's receipt of notice of Plaintiff's EEOC charge, they cannot be retaliatory in nature. (*Id.*) However, two took place subsequent to receipt of the EEOC charge, constituting at least a plausible basis for Plaintiff's retaliation claim: Plaintiff served as an adjunct in the Department of Admissions from January to June 2006, and as an adjunct twice in the York College Counseling Center from February to August 2006, both positions to which he was not

reappointed. (*Id.* ¶¶ 104, 106-07.) Based on the undisputed record, Plaintiff has failed to establish a causal connection between the protected activity and the adverse employment action.

Plaintiffs may establish retaliatory conduct in one of three ways: (1) "indirectly by showing that the protected activity was followed closely by discriminatory treatment"; (2) "through other indirect evidence such as disparate treatment of fellow employees who engaged in similar conduct"; or (3) "directly through evidence of retaliatory animus directed against a plaintiff by the defendant." *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991) (internal quotations omitted). Plaintiff has provided no indirect evidence of disparate treatment or direct evidence of retaliatory animus. To establish a causal connection using the first method, there must exist "very close" temporal proximity between the employer's awareness of the protected activity and the adverse employment. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Plaintiff's retaliation claim with respect to the adjunct positions fails on multiple levels. First, and dispositive in and of itself, Plaintiff has provided no evidence to rebut sworn testimony offered by Defendants showing those responsible for adjunct hiring at the time the adverse employment actions took place were wholly ignorant of Plaintiff's EEOC charge. (Def.'s 56.1 Stmt. ¶¶ 105-06, 109-10.) As noted earlier, adjunct employees at CUNY are appointed temporarily for a fixed period, with no guarantee of reappointment. These decisions are based on the need of the departments and CUNY's financial ability to compensate employees. (Def.'s 56.1 Stmt. ¶¶ 90-92.) Decisions are made at the department level; though a Human Resources Office report is ultimately signed by Keizs, her role in the process is passive. (Def.'s 56.1 Stmt. ¶ 93.)

Second, Defendants have articulated a legitimate reason for deciding not to reappoint him: Director of Admissions Warmsley determined that full-time employees could perform Plaintiff's work, and the Counseling Center lost funding which led to the expiration without renewal of both Plaintiff and another adjunct employee's positions. (Def.'s 56.1 Stmt. ¶¶ 105-06, 109-10.) Plaintiff has provided no evidence whatsoever that these decisions were pretextual.

Likewise, Plaintiff's claim fails because he has not established a causal connection indirectly by showing temporal proximity. As noted above, Plaintiff attempts to rely on decisions that preceded his EEOC complaint. Defendants received notice of the discrimination charge at least seven months prior to the failure to re-appoint Plaintiff. This length of time is too remote to establish the necessary causal connection, particularly in light of Defendants' legitimate, non-discriminatory reasons for these employment decisions. *See, e.g., O'Reilly v. Consol. Edison Co. of N.Y.*, 173 F. App'x 20, 22 (2d Cir. 2006) (finding a three-month gap between protected activity and adverse action may negate inference of retaliation); *Carr v. Westlb Admin., Inc.*, 171 F. Supp. 2d 302, 309-10 (S.D.N.Y. 2001) (noting that, although there is no bright line rule, a four-month lapse of time was insufficient). Plaintiff has failed to establish sufficient evidence allowing a rational jury to conclude that Defendants' stated reasons were false and a pretext for retaliatory animus.

## B. Failure to Hire[11]

Plaintiff further alleges that York retaliated against him by failing to hire him to positions to which he applied. Of forty-two individuals who applied for the Director of Counseling position in June 2007, seven individuals were selected for an interview. (Def.'s 56.1 Stmt. ¶¶

---

[11] Plaintiff's allegations that he was passed over for Vice President of Student Development, Assistant Director of the SEEK Program, Coordinator of Assessment, and Instructor in Psychology as a result of retaliatory conduct, are absent from his Amended Complaint and thus are not considered. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). In any event, even if admissible, all lack temporal proximity sufficient to establish causation.

82-83.) Plaintiff was not among those selected, and contends that the reason for this exclusion was retaliation for his EEOC charge. Plaintiff has failed to make out a case for retaliation for this position. He has produced no evidence showing who the decision-makers were[12] with respect to hiring for this position, and there is no evidence to show that any individual with authority was aware of his EEOC charge. Moreover, there is no evidence to establish a causal connection between the EEOC charge and the decision not to hire Plaintiff – for example, plaintiff has not established, and the record is devoid of any evidence as to the qualifications for the position, the qualifications the other applicants, or the qualifications of the successful applicant ultimately hired. (Def.'s 56.1 Stmt. ¶ 85.) Moreover, the fourteen month lapse between the employment decision and Plaintiff's protected activity fails to establish temporal proximity required to prove a causal connection. Finally, even if he could establish a prima facie case, the Defendants have articulated a legitimate reason for not hiring him, namely that he was not one of the seven of forty-two most qualified applicants, and Plaintiff has offered no evidence of pretext.

An April 2007 search for Director of Academic Advising was terminated as a "failed search" for lack of qualified applicants. Though Plaintiff claims he applied for the position again when it became available in October 2007, York denies receipt of his application. (*Id*. ¶¶ 75-79.) However, even if it were the case that his resume was ignored, Plaintiff has failed to make a prima facie showing of retaliation, due to substantially similar reasons as that articulated for the June 2007 search – namely, the record is devoid of any particulars regarding the hiring process for the position, the other applicants' qualifications, or the qualifications of the individual ultimately chosen. In any event, the seventeen month gap fails to establish temporal proximity required to prove a causal connection.

---

[12] It is undisputed, however, that Keisz was not involved in this decision. (Def.'s 56.1 Stmt. ¶ 84.)

Finally, though Plaintiff was selected for further interviews when he applied to the position of SEEK Counselor in May 2008, the record establishes that he withdrew from the process of his own accord.  (*Id*. ¶¶ 86-89.)

**C.  McNair Scholars Program**

In 2007, Plaintiff was terminated from his position as the part-time Administrative Director of the McNair Scholars Program at York College by the Research Foundation of the City University of New York, a private non-profit organization.  (*Id*. ¶ 113.)  Though Plaintiff contends that this was the result of retaliation for filing an EEOC charge, Plaintiff has provided no evidence whatsoever showing those responsible for funding the program were aware of his EEOC charge, and thus he is legally unable establish a prima facie case of retaliation.

Moreover, the McNair program was funded with federal grant money – it was not administered by CUNY.  (*Id*. ¶¶ 114-15.)  It was the federal government, not CUNY, that declined to renew Plaintiff's employment in this instance.  Thus, Plaintiff is utterly unable to establish a causal connection between the termination of the McNair program and his protected activity.  Indeed, Defendants received notice of the discrimination charge at least one year prior to Plaintiff's termination, rendering the window simply too wide to show causation here. Plaintiff has failed to establish sufficient evidence allowing a rational jury to conclude that Defendants' stated reasons were false and a pretext for retaliatory animus.

Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's retaliation claim.

**III.    N.Y. EXECUTIVE LAW § 296**

Discrimination claims pursuant to New York Executive law § 296 are evaluated under the same burden-shifting analysis as that utilized by courts in evaluating Title VII claims.  *Tomka*

*v. Seiler Corp.*, 66 F.3d 1295, 1304 n.4 (2d Cir. 1995); *McCoy v. City of N.Y.*, 131 F. Supp. 2d

363, 375-76 (E.D.N.Y. 2001).  This Court, in keeping with the usual practice of this Circuit, will

treat Plaintiff's Title VII and New York State Human Rights Law claims "as analytically

identical, applying the same standard of proof to both claims."  *Dauer v. Verizon Commc'ns,*

*Inc.*, 613 F. Supp. 2d 446 (S.D.N.Y. 2009) (quoting *Salamon v. Our Lady of Victory Hosp.*, 514

F.3d 217, 226 n. 9 (2d Cir. 2008).  For the reasons Plaintiff fails to establish claims of

discrimination and retaliation, explained *supra*, Plaintiff has not shown that a reasonable jury

could find in his favor here.  Plaintiff's claims against York and Keizs based on the NYSHRL

are DISMISSED.

## IV.    NEW YORK CITY HUMAN RIGHTS LAW

In addition to claims brought under federal and state laws, Plaintiff also asserts claims

under the NYCHRL against Keizs in her individual capacity, seeking monetary relief for race,

gender, and age discrimination, and retaliation.  The NYCHRL provides, in relevant part:

> [i]t shall be an unlawful discriminatory practice . . . [f]or an
> employer or an employee or agent thereof, because of the actual or
> perceived age, race . . . , [or] gender . . . of any person, to . . .
> discharge from employment such person or to discriminate against
> such person in compensation or in terms, conditions or privileges
> of employment.

N.Y.C. Code § 8-107(1)(a).  In accordance with the Local Civil Rights Restoration Act of

2005,[13] these claims must be reviewed independently from, and more liberally than, their federal

and state counterparts.  *See Abraham v. N.Y. City Dept. of Educ.*, No. 09-2238-cv, 2010 WL

3668675, at *2 (2d Cir. Sept. 22, 2010) (summary order); *Fowler v. Scores Holding Co., Inc.*,

677 F. Supp. 2d 673, 682 (S.D.N.Y. 2009); *see also Williams v. N.Y. City Housing Auth.*, 61

A.D.3d 62, 872 N.Y.S.2d 27, 66 (App. Div. 2009).

---

[13] N.Y.C. Local Law No. 85 (2005).

Pursuant to 28 U.S.C. § 1367(c)(3), a district court has the discretion to decline to exercise supplemental jurisdiction over state claims after the dismissal of all claims over which it had original jurisdiction or over claims raising "a novel or complex issue of State law." 28 U.S.C. § 1367(c). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1998). Justification for exercising supplemental jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

This Court declines to exercise supplemental jurisdiction over Plaintiff's NYCHRL claims. These claims are more appropriately determined in a state forum in the interests of comity and efficiency. *See Carnegie-Mellon Univ.*, 484 U.S. at 357 (holding that a district court has discretion to remand to state court a removed case involving supplemental claims "in the manner that best serves the principles of economy, convenience, fairness, and comity."); *Gibbs*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) (finding district court dismissal of state law claims proper since it would "be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."). Indeed, courts in this district frequently decline to exercise supplemental jurisdiction over a Plaintiff's NYCHRL claims subsequent to dismissing all federal claims. *See e.g., Mabry v. Neighborhood Defender Serv.*, No. 10 Civ. 4016 (PKC),

2011 WL 335867, at *16 (S.D.N.Y. Jan. 31, 2011); *Burchette v. Abercrombie & Fitch Stores,*

*Inc.*, No. 08 Civ. 8786 (RMB)(THK), 2010 WL 1948322, at *12 (S.D.N.Y. May 10, 2010).

Therefore, Plaintiff's claims under the NYCHRL are DISMISSED without prejudice.

## CONCLUSION

For the reasons stated above, Defendant's summary judgment motion is GRANTED as to

all claims except Plaintiff's NYCHRL claim, which is dismissed without prejudice.  The Clerk of

Court is directed to enter judgment and close this case.

SO ORDERED.

Dated: Brooklyn, New York
       August 22, 2011

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge